OPINION FRY, Judge. {1} Defendant Gisela Alderete was charged with possession of over one hundred pounds of marijuana with intent to distribute, along with other related charges, after detectives discovered a large amount of marijuana in her vehicle following a traffic stop. In a motion to suppress the evidence seized during the search of her vehicle, Defendant argued that the traffic stop was pretextual and that the actual motivation for the stop was that she had just left a house that was under surveillance for drug trafficking. The district court agreed, concluding that but for the drug investigation, Defendant would not have been pulled over for her traffic offense, and it suppressed all of the evidence obtained during the search of Defendant’s vehicle. On appeal from the district court’s ruling, the State argues that the subjective motivations of officers other than the stopping officer cannot be imputed to the stopping officer and that if the motivations of the other officers are considered, the detective who requested the stop had a constitutionally valid basis for doing so. For the following reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion. BACKGROUND {2} In March 2007, detectives with the Albuquerque Police Department received a tip from a confidential informant that a house in Albuquerque was being used as a stash house for large amounts of marijuana and that a large quantity of the drug would be delivered to the house sometime during the week of March 12. The detectives had previously received reliable information from the informant. Throughout the week of March 12, the detectives conducted surveillance of the house and, at 7:10 a.m. on March 16, a black pickup truck arrived at the house and a man got out and approached the front door. A second man came out of the house, and the two men returned to the truck, where they began to have a conversation while looking at three large moving boxes in the back of the truck. According to the affidavit for a search warrant, the two men were “looking around in all directions and appeared to be conducting counter surveillance ... in [an] attempt to locate police.” The two men removed the boxes from the truck and carried them into the house. At some point after the detectives observed this activity, the confidential informant contacted the detectives and informed them that he or she knew “first hand, through conversations with the residents [of the home], that a large quantity of marijuana is currently being stored at the residence.” Based on their observations and the information provided by the informant, one of the detectives obtained a warrant for a search of the house. {3} At 10:20 a.m., approximately three hours after the boxes were taken into the house, and while the signed search warrant was en route, the detectives observed a Hispanic male, later identified as Defendant’s husband, Mario Alderete, load a box resembling the three boxes that had been delivered in the morning into a truck and leave the premises. Mr. Alderete’s vehicle was stopped for a traffic violation and, at the time of the stop, Mr. Alderete was on his cell phone. He was given a warning for talking-on the phone while driving. When the stopping officer approached the vehicle, he could see that the box was opened and that it contained several packages wrapped in brown packing tape, which was consistent with the packaging of large quantities of drugs. Mr. Alderete subsequently consented to a search of his vehicle, and approximately forty-nine bundles of marijuana were discovered in the box. {4} Approximately ten minutes after Mr. Alderete left the house and was stopped, the detectives surveilling the house observed a white Ford Expedition leave the residence’s garage. Sergeant Christman radioed for someone to pull the vehicle over, and Officer Jason Westbrook, who was waiting in a nearby staging area in preparation for the execution of the search warrant, responded. Officer Westbrook testified that he heard on the radio that a white Ford Expedition had just come out of the garage at the subject house, and he heard someone say that “they would like the vehicle ... that was leaving the residence to be stopped.” Officer Westbrook testified that this was not an order or a directive but “more of a request.” After hearing the request to stop the vehicle, Officer Westbrook immediately left the staging area and observed the vehicle make a left turn onto Juan Tabo and begin traveling northbound. Officer Westbrook caught up to the vehicle and observed it make two sudden lane changes without signaling. Officer Westbrook testified that he believed that the driver might have been trying to get out of the lane he was in “to avoid being stopped or just to not be ahead of’ him. {5} When he stopped the vehicle, Officer Westbrook asked the driver (later identified as Defendant) for the bill of sale for the vehicle and her insurance information. Defendant provided him with paperwork for a completely different vehicle and advised him that she did not have insurance. Officer Westbrook advised Defendant that he was going to have to tow her vehicle pursuant to the police department’s standard operating procedure requiring the towing of uninsured vehicles. {6} Prior to beginning an inventory search of the vehicle, Officer Westbrook advised Defendant that he had seen two large cardboard boxes in the back of the vehicle and asked her if she had anything valuable in the boxes. According to Officer Westbrook, Defendant “became extremely nervous at that point},] stated that she did not have any idea what was in those boxes,” and told Officer West-brook that she would need to call her husband. During a subsequent inventory search of the vehicle, Officer Westbrook opened the boxes and observed “small brick-like shaped items” in the boxes. Another detective later obtained a search warrant for Defendant’s vehicle and its contents and discovered fifty-eight bundles of marijuana in one box and fifty-six bundles in the other. {7} Defendant was arrested and charged with possession of marijuana (over one hundred pounds) with intent to distribute, conspiracy to possess, and child abuse based on the fact that her two-year-old daughter was in the car at the time of the stop. Prior to trial, Defendant moved to suppress the evidence obtained during the inventory search of her vehicle, arguing that Officer West-brook’s traffic stop was pretextual, that the real reason she was stopped was to investigate her involvement in drug activity, and that Officer Westbrook did not have reasonable suspicion to justify stopping Defendant to investigate her involvement in drug activity. Relying on our recent decision in State v. Ochoa, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143 (filed 2008), cert. quashed, 2009-NMCERT-011, 147 N.M. 464, 225 P.3d 794, the district court concluded that while Officer Westbrook had reasonable suspicion to stop Defendant for the traffic offense she committed, the underlying reason for the stop was the ongoing drug investigation at the residence and the stop was therefore pretextual. The court noted that “but for the request of the drug investigation officer ... that [Defendant] be stopped, there[ is] no indication that there otherwise would have been a stop.” The court also concluded that there was no individualized reasonable suspicion directed at Defendant herself that would otherwise make the stop lawful. The court explained that Defendant was not a prime suspect and that there was not “enough of a factual predicate for there to be a reasonable suspicion directed specifically to her.” Based on its conclusion that the stop was pretextual, the district court suppressed all of the evidence found in Defendant’s vehicle. The State appeals. {8} On appeal, the State argues that the evidence should not have been suppressed because: (1) the subjective motivations of officers other than the stopping officer cannot be imputed to the stopping officer; (2) if the motivations of the other officers are considered, the detective who requested the stop had a constitutionally valid basis for doing so; and (3) we should reconsider our decision in Ochoa. Because we agree with the State’s assertion that the detectives had a constitutionally valid basis for stopping Defendant’s vehicle, we do not address the State’s remaining arguments. DISCUSSION Standard of Review {9} Because suppression of evidence is a mixed question of law and fact, we apply a two-part review to a district court’s decision regarding a motion to suppress. We review any factual questions under a deferential substantial evidence standard, and we review the application of the law to the facts de novo. State v. Neal, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. In doing so, we “review the facts in the light most favorable to the ... district court’s factual findings so long as substantial evidence exists to support those findings.” Id. Pretext {10} The district court determined that Officer Westbrook’s stated reason for stopping Defendant, an unsafe lane change, was pretextual and that the actual motive for the stop was to investigate whether she was involved in drug activity. The court based this determination on the test we delineated in Ochoa, 2009-NMCA-002, ¶ 40, 146 N.M. 32, 206 P.3d 143, for determining whether a stop is pretextual. In Ochoa, we explained that the district court should first determine whether there was reasonable suspicion or probable cause for the stop and then decide if the officer’s actual motive for the stop was unrelated to the justification for the stop. Id. “[T]he defendant has the burden of proof to show pretext based on the totality of the circumstances” and, “[i]f the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual.” Id. However, “[i]f the defendant shows sufficient facts indicating the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause, then there is a rebuttable presumption that the stop was pretextual,” at which point the burden shifts to the state to establish, based on the totality of the circumstances, that the officer would have stopped the defendant even without the unrelated motive. Id. Determining whether a stop is pretextual requires courts to “consider the totality of the circumstances, judge the credibility of witnesses, weigh the evidence, make a decision, and exclude the evidence if the stop was unreasonable at its inception.” Id. ¶ 39. We explained that “[t]he totality of the circumstances includes considerations of the objective reasonableness of an officer’s action and the subjective intent of the officer — the real reason for the stop.” Id. {11} In holding that pretextual stops are unconstitutional, we noted that “[t]he purpose of our objective reasonable suspieion/probable cause exception to the warrant requirement is to prevent officers from arbitrarily acting on whims or unsupported hunches” and that “[t]he purpose of the exception is undermined where the reason for the stop is an unsupported hunch or is otherwise legally insufficient.” Id. ¶ 37. Thus, while evidence obtained from a search incident to a pretextual stop will be suppressed, suppression is only required if the “unrelated motive ... tvas not supported by reasonable suspicion or probable cause.’’ Id. ¶ 40 (emphasis added). See State v. Gonzales, 2011-NMSC-012, ¶ 14, 150 N.M. 54, 257 P.3d 894, 2011 WL 1261380 (2011) (explaining that a pretextual stop is unconstitutional only if law enforcement lacks reasonable suspicion to stop the defendant for the unrelated motive). {12} Because an otherwise pretextual stop will only be invalidated if the underlying motive is not supported by reasonable suspicion or probable cause, we address first whether the unrelated motive the district court identified' — stopping Defendant’s vehicle to investigate drug activity — was supported by reasonable suspicion or probable cause. Because we conclude that this unrelated motive for the stop was supported by reasonable suspicion, we do not address whether the court properly determined that the officer’s stated reasons were not the actual reasons for the stop, nor do we accept the State’s invitation to reconsider Ochoa. Reasonable Suspicion Justified an Investigatory Stop of Defendant’s Vehicle {13} The district court concluded that the unrelated motive for stopping Defendant’s vehicle was not supported by reasonable suspicion because there was no “individualized reasonable suspicion directed at [Defendant] herself.” On appeal, the State argues that there was reasonable suspicion that the driver of the vehicle that left the garage of the residence under surveillance, whoever that may have been, was involved in criminal activity and that the stop of the vehicle was therefore permissible. We agree. {14} “With respect to determinations of reasonable suspicion, we engage in a de novo review, as the decision of whether police conduct was objectively reasonable extends beyond fact-finding.” Neal, 2007-NMSC-043, ¶ 19, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted). Whether an officer has reasonable suspicion is “measured by an objective standard, in which the court examines the totality of the surrounding circumstances, to determine whether the officer acted reasonably in expanding the scope of [the] inquiry.” Id. ¶ 21 (internal quotation marks and citation omitted). Reasonable suspicion is defined as “a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law.” Id. (emphasis omitted) (internal quotation marks and citation omitted). {15} “Police may make an investigatory stop in circumstances that do not rise to the level of probable cause for an arrest if the officers have a reasonable suspicion that the law has been or is being violated.” State v. Sanchez, 2005-NMCA-081, ¶ 11, 137 N.M. 759, 114 P.3d 1075. In order to justify a stop based on reasonable suspicion, the State “must provide specific and articulable facts that, together with the rational inferences from those facts, reasonably warrant the intrusion.” Id. Officers are entitled to draw upon their experience and training and make inferences and deductions about the information available to them, but reasonable suspicion cannot be based on unsupported intuition or inarticulate hunches. See State v. Flores, 1996-NMCA-059, ¶ 8, 122 N.M. 84, 920 P.2d 1038. Specific information from an informant or reasonable inferences drawn from that information may provide reasonable suspicion to justify an investigative stop. State v. De Jesus-Santibanez, 119 N.M. 578, 581, 893 P.2d 474, 477 (Ct.App.1995). In determining whether reasonable suspicion exists, our concern is whether the facts and inferences known to the officer “warrant a person of reasonable caution in believing that criminal activity was possibly afoot.” State v. Prince, 2004-NMCA-127, ¶ 10, 136 N.M. 521, 101 P.3d 332 (internal quotation marks omitted). ' {16} The district court relied on Ochoa in granting the motion to suppress. Ochoa relied on Neal, in which our Supreme Court held that an officer lacked reasonable suspicion to detain an individual in order to search for drugs where the officer had observed the defendant briefly stopping in front of a house that was under investigation for drug trafficking and speaking to a known convicted felon who resided at the house but where the officer did not have any specific information that criminal activity had occurred. Neal, 2007-NMSC-043, ¶ 28, 142 N.M. 176, 164 P.3d 57. The Court explained that “[the defendant's mere association with a convicted felon ... who was under surveillance in an ongoing drug investigation, was insufficient to create reasonable suspicion of [the djefendant.” Id. ¶ 30. The Court noted that “it was not reasonable for [the officer] to infer from the circumstances and his observations that [the defendant had been involved in a drug transaction” and that “[the defendant's innocent conduct and the surrounding circumstances, viewed together and indulging the factual inferences drawn by [the officer], do not constitute the type of individualized, specific, articulable circumstances necessary to create reasonable suspicion that [the defendant himself was involved in criminal activity.” Id. ¶31. The Court characterized the circumstances instead as “the type of conjecture and hunch we have rejected in the past as insufficient to constitute reasonable suspicion.” Id. Notably, the officer in Neal did not observe an exchange of drugs or any other suspicious activity. Id. ¶¶ 4-5. Rather, he merely saw the defendant talk to a man who was a known felon outside of a house that was under investigation for drug activity. Id. {17} In Ochoa, we relied on Neal to conclude that the stop was unconstitutionally pretextual because the underlying basis for the stop, investigation of drug activity, lacked reasonable suspicion. The officers were surveilling a house for drug trafficking when they observed a vehicle they had never seen before arrive at the house. Ochoa, 2009-NMCA-002, ¶ 2, 146 N.M. 32, 206 P.3d 143. When the vehicle later drove away, the officers stopped the vehicle because they wanted to identify and question the driver. Id. We concluded that these facts were insufficient to create reasonable suspicion that the defendant was involved in criminal activity. Id. ¶ 45. {18} Unlike the officers in Neal and Ochoa, the detectives in the present case who were observing the subject house had specific factual information regarding the residents’ possible involvement in drug trafficking and therefore had reasonable suspicion to conduct an investigatory stop of Defendant’s vehicle to confirm or dispel their suspicions. The detectives had a tip from a reliable, confidential informant, which included specific, predictive information that a large amount of marijuana was going to be delivered to the house under surveillance. This information was corroborated by the delivery of three large boxes and the subsequent call from the informant indicating that marijuana was currently being stored in the house. See Flores, 1996-NMCA-059, ¶ 9, 122 N.M. 84, 920 P.2d 1038 (explaining that informant’s tip, which included specific predictive information, was confirmed by police observation and provided reasonable suspicion for an investigative stop). The detectives understood from the informant that the residence was a possible “stash house” used for the temporary storage and redistribution of large amounts of drugs. On the basis of this information, Detective Porter obtained a search warrant for the house and “any structures or objects found within the curtilage” of the residence. Thus, a district court judge concluded that this information constituted probable cause for such a search, although apparently neither Officer Westbrook nor the detectives observing the house knew that the judge had signed the warrant at the time Defendant’s vehicle was observed leaving the garage. {19} It appears that shortly after Detective Porter left the scene to obtain the search warrant, detectives saw the man later identified as Defendant’s husband leaving the house at 10:10 a.m. with one of the three boxes. The officers stopped Defendant’s husband and discovered forty-nine packages of marijuana in that box. At 10:20 a.m., detectives saw the vehicle Defendant was driving leave the garage and drive away. Given the closeness in time of the two departures from the house, the detectives could reasonably infer that Defendant was taking one or more of the remaining two boxes to a secondary location when her vehicle left the house shortly after her husband’s vehicle left. Unlike the circumstances in Ochoa, where the sole basis for the officer’s suspicion was that a vehicle briefly stopped at a known drug house, the detectives in this case could reasonably suspect that a large amount of drugs had been in the house that Defendant had just left and that Defendant could be transporting those drugs to an alternate location. Indeed, the informant had indicated that the house was to be used for temporary storage and redistribution of the drugs. {20} Thus, specific and articulable facts supported the detectives’ suspicion that Defendant was engaged in illegal activity, and that suspicion was not an unsupported intuition or a baseless hunch. Rather, the suspicion directed at Defendant’s vehicle was based on the detectives’ surveillance of the house from which the vehicle exited, a reliable tip that marijuana was going to be delivered to and redistributed from the house, corroboration of the tip, and the reasonable inferences that could be drawn from the fact that Defendant’s husband left the house with only one of the three previously observed boxes in close proximity to Defendant’s leaving the garage. While the detectives did not have any information regarding Defendant herself, they had reasonable suspicion that the driver of the vehicle that left the garage, whoever that may have been, was involved in the drug activity they had observed throughout the course of their investigation, and they were permitted to make an investigatory stop to confirm or dispel their suspicions. We therefore conclude that the unrelated motive for stopping Defendant’s vehicle — the investigation of drug activity — was supported by reasonable suspicion. Consequently, the district court order suppressing the evidence obtained during the inventory search of Defendant’s vehicle was erroneous. {21} The dissent contends that we have “abandon[ed] the standard of review” and “assert[ed] a view and interpretation of the facts in the light most favorable for reversal.” Dissent, ¶ 36. The dissent bases this contention on its view that we have failed to give appropriate deference to the district court’s findings. We believe we have applied the proper standard of review. We have deferred to the district court’s findings, which included findings as to the circumstances leading up to and surrounding the encounter with Defendant and a finding that Officer Westbrook was credible. See Neal, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (explaining that appellate courts “defer[ ] to the district court’s factual findings so long as substantial evidence exists to support those findings”). However, the question of whether reasonable suspicion supported the stop of Defendant to investigate her involvement in suspected drug trafficking is subject to de novo review. Id. ¶ 19 (“With respect to determinations of reasonable suspicion, we engage in a de novo review, as the decision of whether police conduct was objectively reasonable extends beyond fact-finding.” (internal quotation marks and citation omitted)). While our de novo assessment of the issue of reasonable suspicion differs from that of the district court, nonetheless it is “the duty of appellate courts to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context.” Id. (internal quotation marks and citation omitted). CONCLUSION {22} For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion. {23} IT IS SO ORDERED. I CONCUR: JAMES J. WECHSLER, Judge. TIMOTHY L. GARCIA, Judge (dissenting).