IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  January 6, 2015_____

**NO. 32,516**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JENNIFER MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Karen L. Townsend, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

{1}     This case presents a new wrinkle on reasonable suspicion. The arresting officer testified that Defendant ran a stop sign and came to a stop in the middle of the intersection, blocking his lane of travel. However, the dashboard camera in the officer's police car demonstrated that this was not the case. The district court found that the officer exaggerated, at least, and gave no credence to the officer's testimony. Nevertheless, relying on the dashboard camera video, the district court found that the officer had reasonable suspicion to stop Defendant and denied Defendant's motion to suppress. On review, we find the video evidence to be ambiguous. Because the district court found that the officer was not credible, and we do not agree with the district court that the video evidence alone supports a finding of reasonable suspicion, we reverse.

**I.     BACKGROUND**

{2}     Defendant was charged in the magistrate court with driving under the influence of intoxicating liquor (DWI), having an open container in the vehicle, and failure to stop at a stop sign. Defendant's motion to suppress on the basis that the officer had no reasonable suspicion to stop her vehicle was denied, and Defendant entered into a plea and disposition agreement, reserving her right to appeal the denial of her

motion to suppress. In Defendant's de novo appeal to the district court, an evidentiary hearing was held on Defendant's motion to suppress. Concluding that reasonable suspicion supported the stop of Defendant's vehicle, the district court denied the motion and remanded the case to the magistrate court. Additional proceedings took place in the magistrate court and district court, which we discuss in more detail below, and Defendant appeals.

## II.    DISCUSSION

### A.    Timely Appeal

{3}    We first address the State's assertion that the appeal is not properly before us because Defendant is appealing from the order denying her motion to suppress, and the notice of appeal from that order was not filed on time. "The timely filing of a notice of appeal is a mandatory precondition to this Court's exercise of jurisdiction." *State v. Vigil*, 2014-NMCA-096, ¶ 7, 336 P.3d 380, *cert. granted*, 2014-NMCERT-009, 337 P.3d 095. The State's argument arises in the following context.

{4}    The district court order denying Defendant's motion to suppress and remanding the case to the magistrate court was filed on July 22, 2010. Over two months later on October 12, 2010, Defendant attempted to fax file a notice of appeal in the magistrate court, appealing the district court order to this Court, but the notice of appeal does not seem to have been filed. In any event, the attempted filing was not timely, and the

2

notice should have been filed with the district court, not the magistrate court. *See* Rule 12-201(A)(2) NMRA (directing that a notice of appeal from the district court is to be filed with the clerk of the district court within thirty days from the date the order or judgment is filed). Defendant was then sentenced in the magistrate court, and Defendant again appealed to the district court, creating a new district court cause number. Defendant then filed a motion to incorporate the original district court appeal with the new case on grounds that the failure to perfect the original appeal was the fault of defense counsel. The district court denied the motion and dismissed the case. Defendant appeals.

{5}     In *State v. Duran*, 1986-NMCA-125, ¶ 1, 105 N.M. 231, 731 P.2d 374, we held that there is a conclusive presumption of ineffective assistance of counsel where a notice of appeal is not filed within the time limit required. In such cases, we will entertain a criminal appeal on the merits. *State v. Lope*, 2014-NMCA-____, ¶ 8, ___P.3d___ (No. 32,511, July 24, 2014). We have recently applied the presumption in several contexts. *See State v. Dorais*, 2014-NMCA-___, ¶¶ 4-5, 7, ___P.3d___ (No. 32,235, May 21, 2014) (concluding that the *Duran* presumption applies where the notice of appeal was not filed for four years following a de novo trial in the district court in an appeal from the magistrate court); *Vigil*, 2014-NMCA-096, ¶ 16 (applying the *Duran* presumption when "an untimely notice of appeal is filed

following the district court's on-record review of a metropolitan court decision"); *State v. Eger*, 2007-NMCA-039, ¶ 5, 141 N.M. 379, 155 P.3d 784 (holding that the *Duran* presumption of ineffectiveness of counsel applies to a defendant's right to appeal a conditional plea agreement to the district court). *Cf. State v. Lope*, 2014-NMCA-____, ¶ 9 (applying the *Duran* presumption where the notice of appeal was timely filed, but the inaction of counsel resulted in the appeal being dismissed); *Olguin v. State*, 1977-NMSC-034, ¶¶ 1, 7, 90 N.M. 303, 563 P.2d 97 (concluding that dismissal of the appeal was not warranted where counsel filed a timely notice of appeal but did not perfect the appeal because the docketing statement was not filed on time).

{6}     Here, defense counsel unsuccessfully attempted to fax file a notice of appeal from the district court order denying Defendant's motion to suppress in the wrong court, and it was untimely. Not applying the *Duran* presumption in this case will result in denying Defendant her constitutional right to appeal because of counsel's failure to comply with the requirements for perfecting the appeal. Because there is no material distinction between the case now before us and our existing precedent in this regard, we conclude the presumption applies and proceed to decide the merits.

## B. Motion to Suppress

{7} The sole issue on appeal is whether Sergeant Rascon had a reasonable suspicion that Defendant failed to stop at a stop sign. In the context of a non-pretextual traffic stop, "a police officer must have reasonable suspicion of criminal activity or probable cause that the traffic code has been violated." *State v. Hicks*, 2013-NMCA-056, ¶ 14, 300 P.3d 1183 (internal quotation marks and citation omitted), *cert. denied*, 2014-NMCERT-004, 301 P.3d 858. Thus, "the State has the burden to establish reasonable suspicion to stop the motorist. If the State fails in its burden, the stop is unconstitutional." *State v. Gonzales*, 2011-NMSC-012, ¶ 12, 150 N.M. 74, 257 P.3d 894 (citing *State v. Ochoa*, 2009-NMCA-002, ¶ 40, 146 N.M. 32, 206 P.3d 143). "As usual, the State has the burden of proof to justify the stop under an exception to the warrant requirement." *Ochoa*, 2009-NMCA-002, ¶ 40.

{8} A reasonable suspicion is "a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Neal*, 2007-NMSC-043, ¶ 21, 142 N.M. 176, 164 P.3d 57 (emphasis, internal quotation marks, and citation omitted). On appeal, we determine whether the facts found by the district court are supported by substantial evidence, and we review the application of the law to the facts under a de novo standard of review. *State v. Alderete*, 2011-NMCA-055, ¶ 9, 149 N.M. 799, 255 P.3d 377.

5

Therefore, "[q]uestions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted); *see Alderete*, 2011-NMCA-055, ¶¶ 13-14 (stating that with respect to a district court's determination of reasonable suspicion, our review is de novo); *State v. Candelaria*, 2011-NMCA-001, ¶ 8, 149 N.M. 125, 245 P.3d 69 ("[W]e consider de novo whether the disputed police activity was reasonable given the totality of the circumstances."). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted). In making this determination, "it is the evidence known to the officer that counts[.]" *Id.* Finally, we must determine that "the officer's action was justified at its inception." *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

{9}     At the evidentiary hearing in the district court Sergeant Rascon testified that at approximately 10:00 p.m., he was on patrol traveling south on a two-lane road when he observed Defendant approaching an intersection with a four-way stop sign at a high rate of speed. "And at the four-way stop sign the vehicle just went past the

stop sign completely into the lane of traffic, southbound lane of traffic. She stepped on her brakes completely and she made a complete stop, but it was in the middle, in the lane of traffic." Sergeant Rascon said that Defendant then made a wide left turn and proceeded north. On cross examination, Sergeant Rascon clarified that Defendant was traveling east and traveled past the stop sign so far, that when she stopped, she was in the middle of the southbound traffic lane, blocking his lane of travel. Sergeant Rascon did not cite Defendant for speeding (he did not know how fast Defendant was driving), or for making a wide turn. The only traffic infraction he cited Defendant with was failure to stop at a stop sign.

{10} The stop was recorded by Sergeant Rascon's dashboard camera, and the video was admitted into evidence. After viewing the video, the district court said:

> Alright, well you know after hearing Sergeant Rascon's testimony I was certainly confused as to why the Defendant would file the motion to suppress because he made it sound very clear why, why he stopped and that there was reasonable suspicion, but I think it just goes to show you really need to review the video in every case. And in this case after reviewing the video, I truly find the truth somewhere in between both positions. I certainly didn't see Sergeant Rascon's testimony that there was, she stopped in the middle of the intersection, I don't think that was the case. However I do think she, she seemed to be going quickly, she seemed to have slammed on her brakes, and she seems to have slammed on her brakes further into the intersection than I think is allowable, creating the reasonable suspicion for Sergeant Rascon to . . . stop [Defendant]. So therefore I will deny Defendant's motion to suppress although I will grant that it was certainly a closer call than I thought it

7

was going to be at first. But I still think Sergeant Rascon did have reasonable suspicion to stop her.

{11} To assess whether the evidence supports the district court's conclusion that the stop was supported by a reasonable suspicion, we begin with the applicable statute. In pertinent part, NMSA 1978, Section 66-7-345(C) (2003) directs that "every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway before entering the intersection." In this case, there is no crosswalk or stop line; thus the question is whether the evidence supports a conclusion that Sergeant Rascon had a reasonable suspicion that Defendant's vehicle failed to stop "at the point nearest the intersecting roadway before entering the intersection." *Id.*

{12} The district court made an express finding after viewing the video that Defendant did not stop in the middle of the intersection, which was directly contrary to Sergeant Rascon's testimony. Also, the district court did not give any indication that it inferred reasonable suspicion from the officer's testimony. The district court could, perhaps, have stripped away the officer's exaggeration while giving credence to the officer's perception that Defendant came to rest in the intersection. But it did

8

not. Instead, the district court found that the officer was not credible. Again, a finding of reasonable suspicion must be based on specific articulable facts that are based on the officer's observations, and it is the evidence that is known to the officer at the time of the stop that counts. Thus, the district court was left with no facts other than the video on which to conclude that the stop was supported by a reasonable suspicion.

{13} We also conclude that the video fails to support a finding of a reasonable suspicion for the stop. The video shows the vehicle as Sergeant Rascon approaches an intersection with a four-way stop sign. To the right, Defendant's car approached the same intersection with its left turn signal on, signaling that Defendant's turn would take her across Sergeant Rascon's lane of traffic, turning onto the same road as Sergeant Rascon, headed the opposite direction. Defendant's vehicle came to a complete stop. Then Sergeant Rascon's car stopped before he engaged his emergency lights, executed a U-turn, and got behind Defendant to initiate the traffic stop. The video shows there is no crosswalk or line painted on the road to indicate where Defendant's car must be behind in order to be in compliance with Section 66-7-345(C).

{14} What the video does not show is whether Defendant's vehicle stopped "at the point nearest the intersecting roadway before entering the intersection" as required

9

by Section 66-7-345(C). Because of the angle on which the video is taken, it is impossible to determine whether Defendant's vehicle is just barely in the intersection (a violation) or just barely behind the intersection (no violation) when it came to a stop. Because the district court did not give any credence to Sergeant Rascon's testimony that Defendant stopped in the middle of the intersection, we must decide whether an ambiguous video by itself can provide a police officer with a reasonable suspicion. We conclude that it cannot. The burden to establish reasonable suspicion falls on the State. *Gonzales*, 2011-NMSC-012, ¶ 12. Without more, an ambiguous video does not meet that burden. *See City of E. Peoria v. Palmer*, 980 N.E.2d 774, 782-83 (Ill. App. Ct. 2012) (agreeing with the circuit court that the officer lacked reasonable, articulable suspicion because the circuit court found the officer to be "not credible" and the dashboard camera video did not provide "conclusive proof" of a violation).

{15} We acknowledge that the district court also looked at the video, and that it came to a different conclusion regarding reasonable suspicion. However, its findings are expressed in speculative terms: "[Defendant] seemed to have slammed on her brakes, and she seems to have slammed on her brakes further into the intersection than I think is allowable[.]" The constitutionality of a stop premised upon reasonable suspicion cannot be based upon speculation or conjecture. *See State v. Houghton*,

10

384 S.W.3d 441, 448-50 (Tex. Ct. App. 2012) (concluding that reasonable suspicion could not be based solely on a video which did not "indisputably" show a traffic violation). Moreover, reviewing a video by itself is like reviewing any other documentary evidence, and we are in as good a position as the district court to view the video and interpret what it shows. *See Kirkpatrick v. Introspect Healthcare Corp.*, 1992-NMSC-070, ¶ 14, 114 N.M. 706, 845 P.2d 800 ("When the resolution of the issue depends upon the interpretation of documentary evidence, this Court is in as good a position as the trial court to interpret the evidence."); *City of Raton v. Vermejo Conservancy Dist.*, 1984-NMSC-037, ¶ 27, 101 N.M. 95, 678 P.2d 1170 ("[W]hen the issue to be determined rests upon the interpretation of documentary evidence, this Court is in as good a position as the trial court to determine the facts and draw its own conclusions[.]").

{16} In *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000), a police officer testified that the defendant consented to a search of his person, and on this basis, the defendant's motion to suppress was denied, which the intermediate court affirmed. *Id.* at 326; 331. However, the Court of Criminal Appeals of Texas reversed both lower courts because a video of the incident presented "indisputable visual evidence contradicting essential portions" of the officer's testimony, and the nature of the evidence presented on the video did not turn on an evaluation of credibility and

demeanor. *Id.* at 332. We find such reasoning persuasive in this case. *See also State v. Collins*, 45,979, p.3 (La. App. 2 Cir. 12/22/10) 87 So. 3d 857, 859 (concluding that there was no unlawful driving on the basis of a video, notwithstanding the testimony of an officer that there was).

{17} For the foregoing reasons, in our de novo review, we conclude that the evidence fails to support a finding that a reasonable suspicion justified the stop of Defendant's car for failing to stop at a stop sign.

## III. CONCLUSION

{18} The order of the district court denying Defendant's motion to suppress is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

{19} **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**M. MONICA ZAMORA, Judge**

12