This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39979**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PAUL COLLINS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Thomas F. Stewart, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Office of David Arnone & Associates
David Arnone
Deming, NM

for Appellant

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Defendant entered a conditional guilty plea to one count of trafficking controlled substances, contrary to NMSA 1978, Section 30-31-20 (2006), and on appeal, argues that the district court should have (1) granted the motion to suppress because the traffic stop that uncovered the evidence supporting the conviction was pretextual under *State v. Ochoa*, 2009-NMCA-002, 146 N.M. 32, 206 P.3d 143; and (2) granted the motion to dismiss based on prosecutorial misconduct. We affirm the denial of the motion to

suppress because the State established that based on the totality of the circumstances, despite a long-standing narcotics investigation, Defendant would have been stopped for travelling approximately 90 miles per hour in a 60 mile-per-hour zone or 42 miles per hour in a 35 mile-per-hour zone. *See id.* ¶ 46. We further affirm the denial of the motion to dismiss based on the district court's supported determination that the State's conduct in responding to the suppression motion did not rise to the level of bad faith as Defendant argues.

## DISCUSSION

**{2}** Because this memorandum opinion is prepared solely for the benefit of the parties, we provide factual detail only as it becomes necessary for our analysis. We first address the motion to suppress, followed by the motion to dismiss.

## I. The Motion to Suppress

**{3}** In *Ochoa*, this Court held that "pretext[ual traffic] stops violate the New Mexico Constitution." *Id.* ¶ 1. To evaluate a defendant's argument that a traffic stop was pretextual, the district court must determine whether (1) "there was reasonable suspicion or probable cause for the stop"; and (2) "the officer's motive for the stop was unrelated to the objective existence of reasonable suspicion or probable cause." *Id.* ¶ 40 (alteration, internal quotation marks, and citation omitted). If the defendant establishes sufficient facts to indicate that "the officer had an unrelated motive that was not supported by reasonable suspicion or probable cause," a rebuttable presumption arises that the stop was pretextual and "[t]he burden shifts to the state to establish that, based on the totality of the circumstances, even without that unrelated motive, the officer would have stopped the defendant." *Id.* This Court reviews the district court's three-part determination de novo, as a mixed question of law and fact. *Id.* ¶ 6.

**{4}** Defendant argues that the traffic stop was not supported by "objective reasonable suspicion[, but] rather it was based on a hunch of alleged trafficking behavior" and that the true purpose of the traffic stop was for a drug task force agent (the Agent) to investigate drug activity. For support, Defendant points to the following contentions. The Agent was investigating Defendant's residence for drug activity, did not conduct traffic stops as part of his duties as a narcotics investigator, and had not yet developed probable cause for any warrants. Defendant contends that the Agent contacted a Silver City Police Department (SCPD) officer (the stopping officer), "advised . . . that [Defendant] was speeding and driving recklessly," and "instructed [the officer] to perform a traffic stop on the vehicle driven by [Defendant] as he approached Silver City on Highway 180." The stopping officer would not have been in the location to stop Defendant if not for the Agent's call and chose the location where she waited in order to stop Defendant. The stopping officer "asserted multiple reasons for pulling over Defendant, but also claimed to not remember when questioned about the basis for the stop" and did not mention reckless driving in the police report or investigate reckless driving. Defendant was permitted to drive twenty-eight miles—between the Agent's observations and the traffic stop—before he was stopped by law enforcement. Based

on this view of the evidence, Defendant argues that the stop was based on pretext. To resolve the matter, we turn to the three-part *Ochoa* analysis.

**{5}** We first disagree with Defendant that the stop was not supported by objective reasonable suspicion. *See id.* ¶ 40. The Agent and the stopping officer observed driving behavior sufficient to support a reasonable suspicion that criminal activity—speeding and/or reckless driving—"occurred or was occurring." *See State v. Vandenberg*, 2003-NMSC-030, ¶ 21, 134 N.M. 566, 81 P.3d 19 (internal quotation marks and citation omitted). Second, the district court appears to have agreed with Defendant that "the officer's primary interest was [Defendant's] drug offenses and the investigation of that" but concluded that the stop was not pretextual "because it was a public safety concern of the speeding and it's described as reckless driving." From this statement, we conclude that the district court decided that Defendant raised a rebuttable presumption that the stop was pretextual (the second *Ochoa* step) but that the State established, based on the totality of the circumstances that, "even without that unrelated motive, the officer would have stopped . . . [D]efendant." *See Ochoa*, 2009-NMCA-002, ¶ 40. We agree with the district court as to the third step—that the State rebutted the presumption that Defendant raised.

**{6}** The evidence presented at the suppression hearing established that the Agent had been surveilling Defendant's residence on suspicion of drug activity for at least a month but that he never sought a warrant to enter the residence or search the car. On the day of the traffic stop while driving toward the residence, the Agent saw Defendant driving and turned around to follow Defendant's vehicle at a distance. Defendant's vehicle was driving at an extremely high rate of speed and based on the distance driven in the time that elapsed, must have reached over 90 miles per hour at times. The Agent did not try to follow closely, because he was not in a marked vehicle and he could not keep up with Defendant. Instead, the Agent called a SCPD Sergeant (the Sergeant)—and did not call the stopping officer directly—to notify the Sergeant of a vehicle driving recklessly toward Silver City. The Agent explained that he used a cell phone to contact the Sergeant directly, rather than contacting dispatch, because he had no radio in the unmarked vehicle, there was "spotty service" in the area, and for security reasons. The Sergeant then directed two SCPD officers to intercept the vehicle. When Defendant was stopped, he was travelling 42 miles per hour in a 35 mile-per-hour zone. The stopping officer suspected Defendant of impaired driving, and drug evidence was discovered in the car. In that vein, the stopping officer initially charged Defendant with driving under the influence, speeding, and having no registration or insurance.

**{7}** To the extent that Defendant argues that the suppression motion was improperly denied based on the State's knowing introduction of false testimony from the law enforcement officers during the suppression hearing as described in the preceding paragraph, Defendant did not argue or invoke a ruling from the district court as to prosecutorial misconduct in relation to the suppression motion. *See State v. Trujillo*, 2002-NMSC-005, ¶¶ 49, 52, 131 N.M. 709, 42 P.3d 814 (reviewing a preserved allegation of prosecutorial misconduct for abuse of discretion and an unpreserved contention for fundamental error). "Prosecutorial misconduct rises to the level of

fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* ¶ 52 (internal quotation marks and citation omitted). Defendant charges that "[e]ach of the officers called to testify gave multiple versions of events, contradicting previous testimony on the record," referring to the testimony of the Agent, a second SCPD officer (the second officer), and the stopping officer. Much of the challenged testimony— including that the Agent did not credibly explain his use of a cell phone rather than the radio and that the second officer forgot that he testified at the preliminary hearing and did not mention that the Agent informed him the vehicle was related to a narcotics investigation—raises questions of credibility and not necessarily false statements. The district court was required to determine whether it believed the Agent's explanation or doubted the second officer after his recollection was refreshed—implicating a credibility determination that is reserved for the district court to make in deciding suppression motions. *See Ochoa*, 2009-NMCA-002, ¶ 39 (requiring the district court to evaluate the credibility of witnesses in order to determine whether a stop is pretextual); *State v. Alderete*, 2011-NMCA-055, ¶ 21, 149 N.M. 799, 255 P.3d 377 (deferring to the district court's credibility findings that are supported by the evidence).

**{8}** Defendant also argues that the stopping officer's initial police report was incomplete and inconsistent with other testimony and that the stopping officer's suppression hearing testimony conflicted with earlier testimony. The police report omits reference to the phone calls and instructions that motivated the stopping officer to set up stationary patrol. The stopping officer explained that she did not reference those calls—or the report of reckless driving—because she saw a separate traffic violation to support the stop and she could testify about the reported reckless driving in court. The stopping officer also stated that "not everything we do can be put in the paper," which suggested security reasons for withholding some information and echoed the Agent's earlier testimony. The stopping officer also acknowledged at the suppression hearing that at the preliminary hearing she had testified that she received instructions from the Agent but explained that she had been mistaken and it was the Sergeant and the second officer who had contacted and directed her. The Agent and the Sergeant testified to the same. The matter was raised during the suppression hearing, and the stopping officer provided explanations that the district court had the discretion to credit. *See Ochoa*, 2009-NMCA-002, ¶ 39; *Alderete*, 2011-NMCA-055, ¶ 21.

**{9}** We view these perceived discrepancies not as the State knowingly using perjured testimony, but rather as Defendant highlighting for the district court bases on which the district court could reject that testimony. The district court either declined to discredit the testimony, relied on different testimony to support its denial of the motion, or did not view any inconsistencies identified by Defendant as evidence that the stop was based on pretext. In any event, because the district court had the opportunity to consider Defendant's arguments about the veracity of the testimony, the State's decision to present the testimony did not deprive Defendant of a fair suppression hearing and therefore did not amount to fundamental error. *See Trujillo*, 2002-NMSC-005, ¶ 52.

**{10}** We do not fault the Agent for relaying the information about Defendant's driving to SCPD and sending law enforcement officers to stop reckless and dangerous driving. Despite the existing drug investigation, the evidence establishes that the Agent was not able to stop Defendant for speeding, the stopping officer saw Defendant speeding, and Defendant would have been stopped for speeding regardless of whether a drug investigation was ongoing. *Cf. Ochoa*, 2009-NMCA-002, ¶¶ 44-46 (noting that the stopping officer could not see the reported seatbelt violation, and the agent investigating drug crimes had little interest in the seatbelt violation). The State therefore rebutted the presumption that the stop was pretextual, and the district court properly denied Defendant's motion to suppress.

## II.      The Motion to Dismiss

**{11}** Defendant's prosecutorial misconduct arguments and the motion to dismiss are also rooted in the motion to suppress. When Defendant filed the motion to suppress in October 2020, the State requested additional time to file a response, and Defendant agreed. Instead of responding, the State dismissed the case without prejudice in November 2020. The case was refiled in February 2021, and the State still filed no response to the suppression motion until after Defendant pointed out the lack of response at a hearing and filed a motion to dismiss. Defendant argued in the motion to dismiss that the State had violated the rules by not responding within fifteen days and that the State refiled the case in bad faith without a basis, new evidence, or responding to the suppression motion. On appeal, Defendant contends that the State breached its duty by (1) failing to file a timely response to the motion to suppress; and (2) relying on "multiple unreliable witnesses" to justify the traffic stop.

**{12}** We note that Defendant's conditional plea agreement reserved the right to appeal only the denial of the motion to suppress and the motion to dismiss. As the State argues, the motion to dismiss that was filed did not concern the "multiple unreliable witnesses." Defendant's appellate position appears to be in part that had the State reviewed the police report and preliminary testimony, the inconsistencies would have led the State not to refile the charges. We have addressed the "unreliable witnesses" argument in the context of the motion to suppress and have affirmed the district court's denial of that motion. As a result, we consider only whether the State's conduct as set forth in the motion to dismiss establishes bad faith in refiling the charges after dismissing the case without prejudice.

**{13}** The State correctly observes that "it is not good practice to not file timely responses and a court could use its inherent powers to sanction a party for doing so" but maintains that no authority requires the district court to dismiss a case with prejudice in those circumstances. The district court properly viewed its role with regard to the State's lack of a response to the motion: "The court is obligated to determine whether or not the motion has a basis in fact and in law for being granted" and the "failure to respond to a motion in the court's mind doesn't mean that the motion is going to be granted." Thus, the State's failure to respond had no impact on the motion being decided on its merits. After hearing Defendant's arguments, the district court concluded,

"I don't think the [State's] behavior in this case, while not commendable . . . merits the extreme example of dismissing the case." Such matters are well within the district court's discretion. *Cf. State v. Ericksen*, 1980-NMCA-029, ¶ 9, 94 N.M. 128, 607 P.2d 666 (explaining that the district court "acts well within [its] duties to assure that the most effective use be made of the court's resources" including "taking appropriate action when prosecutors engage in sham procedures" (internal quotation marks and citation omitted)). Concluding that the district court did not abuse its discretion under the circumstances by determining that the State's actions did not rise to the level of bad faith, we affirm the denial of Defendant's motion to dismiss.

**CONCLUSION**

**{14}**   We affirm the district court.

**{15}   IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**