2005-NMCA-081

114 P.3d 1075

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mario SANCHEZ, Defendant–Appellant.**

**No. 24,666.**

Court of Appeals of New Mexico.

May 12, 2005.

Certiorari Denied, No. 29,250,
June 24, 2005.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} Mario Sanchez (Defendant) appeals the denial of his motion to suppress the crack cocaine seized from his pocket by an Albuquerque police officer. Defendant challenges the legality of the investigatory detention and subsequent pat down; he also contends that under the New Mexico Constitution, exigent circumstances were necessary for the legal seizure of the crack cocaine without a warrant. We conclude that Defendant's arguments are without merit, and we affirm.

## I. FACTS AND BACKGROUND

{2} Defendant was indicted on one count of trafficking cocaine by possession with intent to distribute. After the district court denied Defendant's motion to suppress, he pled no contest, reserving for appeal the issue of whether the search and seizure violated his constitutional rights. At the hearing on the suppression motion, the parties stipulated to the facts contained in a pretrial interview with Officer Eric Brown. We detail the general facts below.

{3} Around 2:30 a.m. on September 15, 2001, police officers were dispatched to a "fight/party/disturbance" at a residence on Eucharist Street in Albuquerque. Officer Brown was one of the responding officers. He was aware that another officer at the scene had stopped a car with a driver who had been stabbed at the party by an unknown assailant. The victim was not cooperating and would not reveal who stabbed him. Officer Brown found the house littered with empty beer cans, bottles, marijuana pipes, and liquor; he saw broken glass and knocked-over furniture. He also saw blood and numerous weapons on the ground, as well as broken windows at the residence and in the cars located at the address. Officer Brown estimated at least fifty people fled the scene upon the arrival of the police. The officers performed a protective sweep of the residence and placed fifteen to twenty individuals from the residence on the curb in front of the residence. Several altercations occurred between the police and those detained in front of the house. According to Officer Brown, many of these people appeared to be drunk or high on drugs; they were yelling and screaming at the officers and wanted revenge. The detainees sometimes got up and tried to walk away, and some took fighting stances. All of this led Officer Brown to believe that his safety was threatened.

{4} He was one of several officers who swept the house and the backyard, where they proceeded to a shed at the back of the property. There were three people hiding inside the shed. Although Defendant initially refused to exit the shed when ordered to do so, he eventually came out. Once the individuals had exited the shed, Officer Brown patted them down. Based on statements concerning his training and extensive experience, Officer Brown described the basis for his immediate belief that a baseball-sized lump was bundled crack cocaine, which he seized from Defendant's pocket. Defendant was indicted and convicted after entering a no-contest plea. This appeal followed.

## II. STANDARD OF REVIEW

{5} In this case, we have a mixed question of fact and law. We view the facts in the light most favorable to the State, as the prevailing party, and defer to the district court's findings of fact supported by substantial evidence. *State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. We review de novo the trial court's application of the law to those facts. *State v. Ochoa*, 2004–NMSC–023, ¶ 5, 135 N.M. 781, 93 P.3d 1286.

### A. Preservation

{6} In Defendant's plea agreement, he reserved "the right to appeal the [c]ourt's denial of his suppression motion argued in this

case." Defendant's motion to suppress does not cite to the state constitution, except in a general manner and in relation to his arrest. At the suppression hearing, Defendant made three arguments: (1) there was no individualized, particularized suspicion for the investigatory detention; (2) there was no individualized, particularized suspicion for the pat down; and (3) there were no exigent circumstances allowing Officer Brown to remove the contents of Defendant's pocket without a warrant. As to his first two points, Defendant does not argue that the New Mexico Constitution should be interpreted differently from the United States Constitution. The State agrees that the lawfulness of Defendant's detention and weapons frisk under the Fourth Amendment was preserved. Thus, we analyze the validity of the investigatory detention and pat down under the Fourth Amendment.

{7} The State argues that Defendant never challenged the seizure of the crack cocaine under the Fourth Amendment and, further, that Defendant did not preserve any argument that the seizure was invalid under the state constitution, as required under *State v. Gomez*, 1997–NMSC–006, ¶¶ 20, 22, 122 N.M. 777, 932 P.2d 1 (requiring that a defendant set forth the basis on which any alleged violation of a right under the state constitution is based). We agree with the State that Defendant did not argue that his rights were violated under the federal constitution when the crack cocaine was removed from his pocket. As to the state constitution, however, Defendant appears to have preserved his argument. At the suppression hearing, Defendant took the position that New Mexico has not yet adopted the plain feel exception to the warrant requirement, as enunciated in *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (holding that an officer may legally seize a concealed object during a pat down if the identity of the object as illegal contraband is "immediately apparent" to the officer). But he did not rely on New Mexico's not having adopted the plain feel doctrine, nor did he argue for or against its adoption. Defendant's contention was simply that in this case, the New Mexico Constitution re-

quires proof of "exigent circumstances before . . . seizure without a warrant."

{8} On appeal, Defendant cites to *Dickerson* and assumes that New Mexico has adopted the doctrine. *See State v. Pierce*, 2003–NMCA–117, ¶ 22, 134 N.M. 388, 77 P.3d 292 (observing that New Mexico has not formally adopted the plain feel doctrine). *But see State v. Paul T.*, 1999–NMSC–037, ¶ 27, 128 N.M. 360, 993 P.2d 74 (recognizing the existence of the plain feel doctrine but stating that the matter was not preserved below). Consequently, Defendant does not assert that the material was removed from his pocket in violation of the Fourth Amendment to the United States Constitution. However, Defendant contends that his rights under Article II, Section 10, of the New Mexico Constitution were violated because the State did not show that there were exigent circumstances to justify the seizure of the pocket contents. Defendant's argument that the state constitution requires exigent circumstances was preserved. Accordingly, we do not address the plain feel doctrine, and we limit our analysis of the removal of the crack cocaine to Defendant's contention that under the New Mexico Constitution, Officer Brown needed to demonstrate exigent circumstances.

### B. Detention and Pat Down

{9} Defendant agrees that it was reasonable for the police to think a crime had been committed on the property where the shed was located. As to the pat down, however, Defendant contends that Officer Brown had no reasonable individualized suspicion that Defendant had committed a crime and that the stop and detention were therefore not justified. We begin with the legality of the stop.

{10} The State's first argument is that no constitutional protections are involved in this case because Defendant was free to go. We disagree with the State's characterization of the encounter. A seizure occurs by either the "use of physical force" by an officer "or submission by the individual" to an officer's assertion of authority. *United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir.2002). When "a police officer ac-

costs an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In determining whether a reasonable person would have felt free to leave, we review all of the circumstances surrounding the encounter and focus on the following three factors: "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *State v. Jason L.*, 2000–NMSC–018, ¶ 15, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). Defendant was discovered in the shed with two other persons. Officer Brown was accompanied by other police officers. All occupants of the shed were ordered out. The other occupants exited. At first, Defendant refused to come out of the shed; he then followed suit and complied with the order. In reviewing the three factors as applied to the facts in this case, we conclude that a reasonable person would not feel free to leave under the circumstances of this case. Thus, we continue our analysis.

{11} Police may make an investigatory stop in circumstances that do not rise to the level of probable cause for an arrest if the officers have a reasonable suspicion that the law has been or is being violated. *Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868; *State v. Flores*, 1996–NMCA–059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. The State must provide specific and articulable facts that, together with the rational inferences from those facts, reasonably warrant the intrusion. *See Jason L.*, 2000–NMSC–018, ¶ 21, 129 N.M. 119, 2 P.3d 856. There is no doubt that the Eucharist Street residence was a crime scene and that at least one violent crime had been committed. One person had been stabbed, and neither the perpetrator nor the weapon had been located at the time Officer Brown discovered Defendant in the shed. Defendant argues that since nothing pointed to his having done the stabbing, he should not have been detained. As found by the trial court, "[i]t was reasonable and proper [for the police] to investigate the people located at the crime scene[, and f]ailure to do so would likely cause the investigation to be deficient and negligent on the part of the officers." The trial court also found that Defendant

was hiding in the immediate vicinity of the crime and was reluctant to comply with the officers' request to come out of his hiding place. We agree with the trial court's assessment of the situation. Officer Brown's detention of Defendant by requesting him to exit the shed for questioning was warranted under the circumstances.

{12} We now turn to the legality of the pat down. Our direction is found in *Pierce:*

Police may initiate a protective patdown search for weapons if they have specific and articulable facts which they contend support their assessment of danger. The search must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. A *Terry* search may not be expanded without probable cause into a search for evidence of a crime. If a protective search goes beyond that which is necessary to determine whether weapons are present, the fruits of the search are suppressed.

2003–NMCA–117, ¶ 9, 134 N.M. 388, 77 P.3d 292 (internal quotation marks and citations omitted).

{13} Defendant was hiding in the shed, and once his presence was discovered, he did not immediately exit the shed, as ordered by the police. While we agree with the trial court's assessment that Defendant's failure to exit the shed created a reasonable inference that Defendant harbored a consciousness of guilt regarding the crime that was being investigated, we do not rely on this conclusion for our holding. We look to the entire situation. The officers were faced with a chaotic situation: numerous participants had fled the scene, and those detained were acting in an aggressive manner. The premises resembled a battle scene—with blood, broken windows, and weapons lying around. Inside the house, the officers had observed empty beer cans, bottles, marijuana pipes, liquor, knocked-over furniture, blood, and broken glass. Officer Brown was aware that a stabbing had occurred and that neither the weapon nor the perpetrator had been located. In assessing the reasonableness of

the necessity for the pat down, we defer to Officer Brown's good judgment. *See Gomez*, 1997–NMSC–006, ¶ 40, 122 N.M. 777, 932 P.2d 1 (stating that we defer to the officer's good judgment in evaluating the existence of exigent circumstances).

■ {14} According to Defendant, there was no justification for the pat down before questioning because there was really no safety concern. In Defendant's view, it would have been impossible for him to have drawn a weapon from concealment before being overwhelmed by the officers. We disagree with Defendant's evaluation of the situation. An officer does not need to wait until he sees "the glint of steel before he can act to protect his safety." *State v. Cobbs*, 103 N.M. 623, 630, 711 P.2d 900, 907 (Ct.App.1985) (internal quotation marks and citation omitted).

{15} Under the circumstances of this case, we agree with Officer Brown's conclusion that a pat down search was necessary for his own protection, as well as for the protection of the other officers and other people in the area. Therefore, we hold that Officer Brown was justified in conducting a pat down of Defendant's person.

### C. Removal of Pocket Contents

{16} Because Defendant does not argue a violation of his Fourth Amendment rights, we need not address the validity of the seizure under *Dickerson*. Nor do we get to the question of whether New Mexico should adopt the plain feel exception to the warrant requirement, since Defendant does not make this argument. Consequently, we limit our review to Defendant's contention that the removal of illegal contraband from his pocket during pat down should only be allowed if Officer Brown can demonstrate that exigent circumstances required the removal. Defendant relies on *Gomez*, 1997–NMSC–006, ¶¶ 33–40, 122 N.M. 777, 932 P.2d 1, and *Campos v. State*, 117 N.M. 155, 158–59, 870 P.2d 117, 120–21 (1994). In *Gomez*, our Supreme Court departed from established federal precedent in interpreting the Fourth Amendment and held that under the New Mexico Constitution, Article II, Section 10, there are no "automatic" exigent circumstances justifying the warrantless search of

an automobile. *Gomez*, 1997–NMSC–006, ¶¶ 44, 46, 122 N.M. 777, 932 P.2d 1. Consequently, the existence of exigent circumstances is evaluated on a case-by-case basis, and only where an officer has reasonably determined that exigent circumstances exist will a warrantless search of an automobile be held valid. *Id.* ¶ 40. *Campos* deals with warrantless arrests. In that case, our Supreme Court held that in order to justify a warrantless arrest, "the arresting officer must show that the officer had probable cause to believe that the person arrested had committed or was about to commit a felony and some exigency existed that precluded the officer from securing a warrant." 117 N.M. at 159, 870 P.2d at 121. If an officer observes the person committing a felony, however, exigency will be presumed. *Id.*

■ {17} In arguing that *Gomez* applies to the facts of this case, Defendant has overlooked the different values that constitutional provisions like the Fourth Amendment and Article II, Section 10, are designed to protect. The search aspect of these provisions protects expectations of privacy, while the seizure aspect protects notions of possession, at least insofar as it applies to objects. *State v. Foreman*, 97 N.M. 583, 585, 642 P.2d 186, 188 (Ct.App.1982).

■ {18} The *Gomez* court was dealing with people's interest in privacy. The requirement of exigent circumstances, in addition to probable cause, gives a heightened level of protection to the privacy interest. Because the value of privacy is so important in New Mexico, this was entirely appropriate. But in this case, the privacy threshold has already been lawfully breached. We have held that the detention and pat down were lawful, and Defendant does not challenge Officer Brown's immediate identification of the cocaine. Since the privacy threshold was breached, the remaining value that Article II, Section 10, would protect is Defendant's interest in possessing his cocaine. But we have held in *Foreman* that Defendant has no such interest. 97 N.M. at 585, 642 P.2d at 188. Under these circumstances, there would be no point to giving a heightened level of protection to Defendant's privacy interest because he has no interest. *See*

*Ochoa,* 2004–NMSC–023, ¶ 8, 135 N.M. 781, 93 P.3d 1286 (allowing warrantless seizure of incriminating evidence observed in plain view during the course of a protective pat down); *State v. Ferguson,* 106 N.M. 357, 358, 743 P.2d 113, 114 (1987) (holding that warrantless seizure of contraband from an incarcerated defendant was proper). Had the evidence in Defendant's pocket not been contraband and instead been lawful objects suspected of being connected with a crime, a different result might obtain. However, we need not decide that question in this case. It is enough to hold that once Officer Brown knew Defendant had rocks of cocaine in his pocket, there was no need for exigent circumstances to allow their seizure without a warrant.

## III. CONCLUSION

{19} We affirm the trial court's denial of Defendant's motion to suppress.

{20} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.