This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 34,199**

**PAUL GIANNINI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hadfield, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Kenneth H. Stalter, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Bauer, Chief Public Defender
Santa Fe, NM
Sergio J. Viscoli, Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant appeals from the district court's judgment affirming the metropolitan court's denial of his motion to suppress evidence supporting his conviction for driving while intoxicated (DWI) and careless driving. We affirm.

## I.   BACKGROUND

**{2}** On April 7, 2012, Albuquerque Police Department Sergeant Louis Armijo was on patrol on a ten-speed bicycle in downtown Albuquerque. At the intersection of Third Street and Coal, a green Toyota sport utility vehicle turned left in front of Sergeant Armijo, forcing Sergeant Armijo to swerve in order to avoid a collision. Sergeant Armijo followed the vehicle as it sped away. Sergeant Armijo observed the vehicle driving erratically, and run two stop signs and a red light, before it stopped. At this point, Sergeant Armijo caught up with the vehicle and was able to observe the vehicle's license plate number and report it to other officers over police radio before it sped away again. Sergeant Armijo was informed that other officers were responding and would be joining the pursuit shortly. Sergeant Armijo continued his pursuit of the vehicle, making continuous reports about the vehicle's location over the radio.

**{3}** At a certain point, Sergeant Armijo observed a marked "gang unit" vehicle pass him in pursuit of the vehicle. Sergeant Armijo testified that he told the officer driving the gang unit vehicle (presumably over the radio, although the record is unclear on this point) that "the vehicle you're after is the first vehicle in the line; it's the green

Toyota up front." Sergeant Armijo never identified the driver of the gang unit vehicle. However, Sergeant Armijo testified that once he had made his initial report over the radio, "the air had been cleared" over the radio so that he could relay his reports to all officers in the area without interruption. Sergeant Armijo testified that his radio transmissions would have been received by "anybody working on that air at that specific time" within the valley area command, including the gang unit officers that had passed him as he pursued the vehicle.

{4} The State's second witness at the bench trial was Albuquerque Police Department Officer Jason Brown. Officer Brown received Sergeant Armijo's reports over the radio, responded, and joined two other police vehicles that were already tracking a vehicle matching the description given by Sergeant Armijo. All three police vehicles activated their emergency lights, but the green Toyota continued to travel for at least one block before coming to a stop.

{5} Officer Brown testified that once the vehicle stopped, officers present on the scene decided to conduct a "high-risk felony stop" of the vehicle and its occupants.[1] The decision to conduct the stop in this manner was not discussed. Officer Brown testified that there was an unspoken consensus that the driver of the vehicle was a

---

[1]A "high-risk felony stop" involves removing all occupants of a vehicle, handcuffing them, and placing them in a police vehicle until the suspect vehicle is cleared.

3

safety risk based on Sergeant Armijo's radio reports that the vehicle had almost hit him and was driving recklessly.

{6}     The driver of the vehicle (identified at trial as Defendant by Sergeant Armijo and Officer Brown) was ordered to exit the vehicle by one of the officers on the scene with Officer Brown. Officer Brown observed Defendant making slow responses to commands and having apparent difficulty understanding simple instructions. Defendant was arrested, after which Officer Brown administered breath alcohol tests, which indicated that Defendant had been driving with a blood alcohol content of 0.13.

{7}     Defendant waived his right to a jury trial, and the case proceeded to a bench trial. Defendant moved to exclude the testimony of Sergeant Armijo and Officer Brown and the results of the breath test from evidence based on a number of arguments that Defendant raises again on appeal and which we discuss below. The metropolitan court denied Defendant's motions and convicted Defendant of DWI and careless driving. Defendant appealed the metropolitan court's judgment to district court, and the district court affirmed.

## II.     STANDARD OF REVIEW

{8}     The Bernalillo County Metropolitan Court exercises combined statutory jurisdiction over county and municipal offenses. NMSA 1978, § 34-8A-3(A)(1) (2001). Part of this jurisdiction includes acting as the "court of record for criminal

4

actions involving driving while under the influence of intoxicating liquors or drugs." NMSA 1978, § 34-8A-6(C) (1993). Any party aggrieved by the metropolitan court's judgment in such cases may appeal the court's judgment to the district court of the county in which the metropolitan court is located (in this case, Bernalillo County). Section 34-8A-6(B). Since the metropolitan court was the court of record in this case, "the district court acts as a typical appellate court reviewing the record of the lower court's trial for legal error." *State v. Foster*, 2003-NMCA-099, ¶ 9, 134 N.M. 224, 75 P.3d 824. The district court's judgment disposing of the appeal is reviewed by this Court in the same manner that the district court reviewed the metropolitan court's judgment. Rule 5-826(M) NMRA; *See State v. Armijo*, No. 34,400, 2016 WL 3266595, 2016-NMSC-___, ¶ 36, ___ P.3d ___ (June 13, 2016) (upholding appellate jurisdiction of the Court of Appeals to review on-record appeals from district court).

{9}     Whether a metropolitan court correctly grants or denies a motion to suppress and whether the district court correctly upheld or reversed the metropolitan court's order is a mixed question of law and fact. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. The district court (and this Court) reviews the metropolitan court's findings of fact for a substantial basis in the record. *Id.* However, we defer to the metropolitan court's resolution of conflicting evidence and evaluation of witness credibility since it "has the best vantage from which to resolve [those] questions." *Id.*

"Therefore, we review the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings." *Id.*

## III.   DISCUSSION

{10}   Defendant argues that the metropolitan court erred in denying Defendant's motion to exclude the testimony of Sergeant Armijo and Officer Brown and the results of Defendant's breath alcohol tests for four reasons: (A) "[t]he evidence used to establish reasonable suspicion was based on the hearsay testimony"; (B) the State was required to submit the testimony of the officer who physically detained Defendant in order to satisfy its burden of proving that the officer had reasonable suspicion to detain Defendant; (C) "[t]he evidence used to expand the scope of the stop was based on hearsay testimony of an unidentified officer who did not testify and violated [Defendant's] rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution"; and (D) "[w]ithout the improperly admitted breath card, there was insufficient evidence to support a conviction for DWI and careless driving." We address each argument in turn.

**A.    The State Could Establish the Existence of Reasonable Suspicion That Defendant Had Committed a Crime with Hearsay Because the Rules of Evidence Do Not Apply to the District Court's Determinations of Fact Regarding Admissibility, Which Include Hearings on Motions to Suppress**

{11}   Defendant argues that because the testimony relevant to determining the

6

existence of reasonable suspicion was given during the bench trial, it was subject to the rules of evidence, more specifically the rule barring the admission of hearsay. *See* Rule 802 NMRA. Defendant's argument appears to turn entirely on the fact that the metropolitan court determined the existence of reasonable suspicion within the same proceeding in which it determined whether Defendant was guilty of the crimes he had been charged with committing. But Defendant never objected to conducting a hearing on his motion to suppress the State's evidence during the same proceeding as the bench trial on the offenses with which he was charged. Accordingly, Defendant failed to preserve this argument on appeal. *See* Rule 12-216(A) NMRA. In any event, the Rules of Evidence (except the rules related to privileges) do not apply to "the court's determination, under Rule 11-104(A) NMRA, on a preliminary question of fact governing admissibility[.]" Rule 11-1101(D)(1) NMRA. Rule 11-1101 does not make any distinction based on whether the preliminary question of fact is decided before or during trial. *Accord State v. Hensel*, 1987-NMCA-059, ¶ 13, 106 N.M. 8, 739 P.2d 126, *overruled on other grounds by State v. Rivera*, 2008-NMSC-056, ¶¶ 21-22, 144 N.M. 836, 192 P.3d 1213. We reject Defendant's argument as forfeited, or in the alternative, on the merits because the rules of evidence do not apply to a district court's initial evaluation of a motion to suppress.

{12}     Defendant argues a related point: that because an unknown officer decided to

conduct a "high risk felony stop[,]" the State was required (and because it did not call that officer, failed) to prove the existence of some justification for a "high risk felony stop" in addition to proving the existence of reasonable suspicion that Defendant had committed a crime. Initially, we note that the lone citation Defendant provides in support of this argument is to *State v. Taylor*, 1999-NMCA-022, ¶ 20, 126 N.M. 569, 973 P.2d 246. But *Taylor* was expressly overruled by *State v. Leyva*, 2011-NMSC-009, ¶ 17 n.1, 149 N.M. 435, 250 P.3d 861, a fact unmentioned in Defendant's brief in chief. Under *Leyva*, once "an officer has made a stop based on at least reasonable suspicion of criminal activity, an officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime. " *Id.* ¶ 19 (alteration, internal quotation marks, and citation omitted). Defendant does not dispute the existence of reasonable suspicion to make the stop and does not argue that the stop was unreasonably prolonged under *Leyva*. Accordingly, and because Defendant offers no authority to support his contention that the State must supplementally justify a decision to employ a "high risk felony stop" in order to prove that evidence was obtained constitutionally, we reject this argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that

"where arguments in briefs are unsupported by cited authority, [we assume that] counsel[,] after diligent search, was unable to find any supporting authority"); *see also State v. Hubble*, 2009-NMSC-014, ¶¶ 23-29, 146 N.M. 70, 206 P.3d 579 (explaining that once reasonable suspicion has been objectively established from the facts presented to the district court, other mistakes by the officer—of fact or law—will not invalidate the stop).

**B.     The Officers Who Arrested Defendant Had Reasonable Suspicion to Conclude Defendant Had Committed a Crime Because They Were Aware of Sergeant Armijo's Reports and Corroborated the Reports With Their Own Personal Observations**

{13}     "Police may make an investigatory stop in circumstances that do not rise to the level of probable cause for an arrest if the officers have a reasonable suspicion that the law has been or is being violated." *State v. Sanchez*, 2005-NMCA-081, ¶ 11, 137 N.M. 759, 114 P.3d 1075. "Since an automobile stop is considered a seizure under the Fourth and Fourteenth Amendments, it must be conducted in a reasonable manner to satisfy the Fourth Amendment." *Hubble*, 2009-NMSC-014, ¶ 7 (internal quotation marks and citation omitted). Therefore, "[b]efore a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity." *Id.* (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856.

9

Our appellate courts "will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted). The State has the burden of proving that an arresting officer was aware of facts giving rise to reasonable suspicion. *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95. We review the district court's findings of fact in support of its evaluation of reasonable suspicion for a substantial basis in the record. *State v. Martinez*, 2015-NMCA-051, ¶ 8, 348 P.3d 1022, *cert. granted*, 2015-NMCERT-005, 367 P.3d 441.

**{14}** Defendant suggests that "an unknown and non-testifying officer" arrested Defendant, and by failing to present this officer's testimony, the State failed to satisfy its burden of establishing that this officer was aware of the specific articulable facts (i.e., Sergeant Armijo's statements about Defendant's violation of various traffic laws that were communicated over radio to nearby officers) giving rise to reasonable suspicion to detain Defendant. The State argues in response that two separate doctrines of Fourth Amendment law justify Defendant's arrest: the "collective knowledge" or "fellow officer" rule and the "police-team exception" to the warrantless misdemeanor arrest rule.

{15}     The "collective knowledge" or "fellow officer" doctrine holds that "the officer who makes the stop need not have reasonable suspicion that criminal activity is afoot. Instead, the knowledge and reasonable suspicions of one officer can be imputed to another." *United States v. Whitley*, 680 F.3d 1227, 1233-34 (10th Cir. 2012). Federal courts recognize separate "vertical" and "horizontal" variants to the rule. *Id.* at 1234. "Under the vertical collective knowledge doctrine, an arrest or stop is justified when an officer having probable cause or reasonable suspicion instructs another officer to act, even without communicating all of the information necessary to justify the action." *Id.* Under the "horizontal" variant, "a number of individual officers have pieces of the probable cause or reasonable suspicion puzzle, but no single officer has sufficient information to satisfy the necessary standard." *Id.* n.3[2] Although New Mexico courts have not espoused federal courts' vertical/horizontal nomenclature, they have recognized the substance of each variant when analyzing the reasonableness of a search or seizure conducted by an officer who is either acting on orders or has insufficient personal knowledge of the facts giving rise to reasonable suspicion. *See State v. Vandenberg*, 2003-NMSC-030, ¶¶ 38-39, 134 N.M. 566, 81 P.3d 19

---

[2]"[H]orizontal" collective knowledge looks to "whether the individual officers have communicated the information they possess individually, thereby pooling their collective knowledge to satisfy the relevant standard." *Id.* (internal quotation marks and citation omitted). The horizontal collective knowledge doctrine is not at issue in this appeal.

(describing facts that amount to the vertical variant of the "collective knowledge" or "fellow officer" doctrine); *State v. Alderete*, 2011-NMCA-055, ¶ 25, 149 N.M. 799, 255 P.3d 377 (describing facts that amount to the horizontal variant of the "collective knowledge" or "fellow officer" doctrine).

{16}  The State also argues that the "police-team exception" to the misdemeanor arrest rule applies in this case. The police team exception applies to the misdemeanor arrest rule, which holds that "a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony. . . . [but] may only arrest without a warrant one guilty of a misdemeanor if committed in his presence." *City of Santa Fe. v. Martinez*, 2010-NMSC-033, ¶ 6, 148 N.M. 708, 242 P.3d 275 (internal quotation marks and citation omitted). But our Supreme Court held in *State v. Ochoa* that the misdemeanor arrest rule does not apply to investigatory traffic stops based on observed violations of the traffic code. 2008-NMSC-023, ¶¶ 14-15, 143 N.M. 749, 182 P.3d 130. Since the rule does not apply to a court's determination of whether reasonable suspicion justified an investigative detention, neither does the exception.

{17}  Returning to the State's "collective knowledge" argument, the State contends that "[Defendant]'s focus is misplaced when he fixates on the non-testifying officers who assisted in the felony stop and placed him in handcuffs. The actual question is

[whether] Sergeant Armijo's observations—communicated by radio to other officers in the area—[would] justify a reasonable officer stopping [Defendant] and detaining him." But we do not understand Defendant to contend that the State must present the testimony of all officers who assist or participate in a stop in order to justify an arrest. Instead, we understand Defendant to argue that the State failed to satisfy its burden of proving that Defendant's detention was supported by reasonable suspicion because it did not present the testimony of the officer who actually seized Defendant (i.e., removed him from his vehicle and placed him in handcuffs).

{18}    We nonetheless reject Defendant's argument. The State was not required to present the testimony of every officer with some role in Defendant's detention in order to justify it, or even that of the officer that individually seized Defendant. The State simply had to prove that the officers who detained Defendant were aware of sufficient facts to form a reasonable suspicion that Defendant had committed a crime. *Sanchez*, 2005-NMCA-081, ¶ 11. Here, Sergeant Armijo testified that he observed Defendant almost hit him and then drive recklessly away, running several stop signs and at least one stoplight. Defendant does not dispute that these observations gave rise to a reasonable suspicion that Defendant had committed a crime. Just as Sergeant Armijo's testimony as to what he observed would have justified his decision to detain Defendant himself, his testimony that he communicated these observations to other

13

officers in the area, communications heard by Officer Brown prior to his participation in the detention and arrest of Defendant, all furnished a basis for the district court to conclude that the officers who ultimately detained Defendant were aware of Sergeant Armijo's observations. Moreover, it is fair to infer from Officer Brown's testimony—indeed, it is the only plausible inference—that all of the officers who were pursuing Defendant were acting on information provided by Sergeant Armijo when Defendant was pulled over, detained, and investigated for drunk driving. Accordingly, we conclude that Sergeant Armijo and Officer Brown's testimony provided a substantial evidentiary basis for the district court to conclude that the officers who detained Defendant were aware of facts giving rise to reasonable suspicion that Defendant had committed a crime. Accordingly, the metropolitan court did not abuse its discretion in holding that Defendant's detention was constitutional. *See Ochoa*, 2008-NMSC-023, ¶¶ 14-15; *Sanchez*, 2005-NMCA-081, ¶ 11.

**C.      Defendant's Sixth Amendment Right to Confront the Witnesses Against Him Was Not Violated by the District Court's Consideration of Hearsay Testimony in Deciding Whether to Suppress the State's Evidence**

{19}     Defendant argues that "[b]ecause the officer who made the decision to conduct the 'high risk felony stop' was not identified and did not testify, [Defendant] was never able to confront the officer and adequately challenge reasonable suspicion." Defendant contends that this amounted to a violation of his right under the Sixth

14

Amendment to the United States Constitution "to be confronted with the witnesses against him[.]" U.S. Const. amend. VI.

{20} As we have explained above, the rules of evidence do not apply to a district court's determination of a preliminary question of fact regarding admissibility, and this includes the district court's determination of fact regarding whether or not the State has justified a search or seizure under the Fourth Amendment of the United States Constitution or Article 10, Section 4 of the New Mexico Constitution. *Hensel*, 1987-NMCA-059, ¶ 13. The same is true under the Confrontation Clause. *Rivera*, 2008-NMSC-056, ¶ 23. Defendant does not appear to dispute either of these propositions, and instead argues that there is a legally significant distinction between this case and *Rivera* because the district court took evidence on Defendant's motion to suppress during the same proceeding as it took evidence on Defendant's guilt. But like Defendant's similar argument with respect to the State's evidence of reasonable suspicion above, Defendant failed to preserve the issue below by objecting to the district court's method of taking evidence and has doubly forfeited the issue on appeal by failing to cite authority in support of his argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2. In the alternative, we reject Defendant's argument on the merits as plainly foreclosed by *Rivera*.

**D.  Because We Have Rejected Defendant's Arguments for Excluding the Breath Card, There Was Sufficient Evidence to Convict Defendant of**

**Driving While Intoxicated and Careless Driving**

{21} Defendant finally argues that because the State failed to prove the existence of reasonable suspicion to detain him, the results of his breath test could not be admitted at the bench trial, and therefore there was insufficient evidence to convict him of driving while intoxicated. Having rejected a necessary premise of this argument—that the State's evidence was obtained unconstitutionally—we also reject Defendant's final issue on appeal.

**III.  CONCLUSION**

{22} Defendant's conviction is affirmed.

{23} **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**