This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37250**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**TANGIE LEE WHITE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}**    Defendant Tangie Lee White appeals her convictions for leaving the scene of an accident, contrary to NMSA 1978, Section 66-7-202 (1978), and possession of a firearm by a felon, contrary to NMSA 1978, Section 30-7-16 (2018, amended 2019). Defendant entered a conditional guilty plea to the offenses, reserving the right to appeal the denial of her motion to suppress. The question on appeal is whether police detained her without reasonable suspicion. For the following reasons, we affirm the district court.

## BACKGROUND

**{2}**     At the suppression hearing, Deputy Lucas Hoover of the San Juan County Sheriff's Office (SJCSO), testified that he stopped Defendant on January 30, 2016, sometime between 9:00 p.m. and 10:00 p.m. for a minor traffic infraction. Deputy Hoover noted the license plate number, make, and model of Defendant's vehicle at that time. Several hours later, at around 1:14 a.m., Deputy Hoover and his partner were dispatched to a residence in connection with a possible vehicle crash. While en route, Deputy Hoover heard a dispatch regarding a woman walking along U.S. Highway 550, wearing dark clothing and carrying a backpack who had been reported by a concerned motorist, but Deputy Hoover was unable to locate her.

**{3}**     When Deputy Hoover arrived at the residence, he saw Defendant's vehicle, which he recognized from the earlier traffic stop, crashed into a parked dump truck. Deputy Hoover testified that Defendant was not at the scene, but he found footprints in the snow leading from the driver's side of the vehicle to a fence on the eastern boundary of the property that bordered U.S. Highway 550.

**{4}**     Aztec Police Officer Nikki Rightmire testified that she was on patrol on January 31, 2016, when she heard an attempt to locate (ATL) from dispatch at around 1:30 a.m. for a woman wearing dark clothing and carrying a backpack who was walking away from an accident that the county was investigating. Soon after, Officer Rightmire located Defendant walking on the highway. Officer Rightmire testified that Defendant was wearing dark clothing and carrying two purses. Officer Rightmire was not sure whether Defendant was the person sought in the ATL, but she decided to stop Defendant and check on her because there was snow on the ground, and Officer Rightmire was concerned because Defendant was wearing only a T-shirt.

**{5}**     Officer Rightmire testified that she approached Defendant and asked what she was doing, and Defendant identified herself as Tangie White. Officer Rightmire testified that there was a car some distance down the highway, and Defendant said that someone in the car had dropped her off. Officer Rightmire then requested Defendant's identification and ran Defendant's information through dispatch, and dispatch advised Officer Rightmire that Defendant was the person sought by the SJCSO deputies. Officer Rightmire then had Defendant sit in her patrol car where Defendant remained until the deputies arrived.

**{6}**     During the suppression hearing, Defendant tendered a CD into evidence that contained recordings of the various communications between the officers investigating the accident and police dispatch, including the ATL issued by police dispatch, communications containing the information received by dispatch from the SJCSO deputies at the scene of the crash, and the communications between Officer Rightmire and dispatch in relation to the ATL. While it is not clear from the recording of the suppression hearing which specific portions of the CD were played for the district court, the entire CD was admitted into evidence, and we consider therefore the entirety of the CD to be evidence on appeal. *See State v. Monafo*, 2016-NMCA-092, ¶ 10, 384 P.3d

134 (stating that in reviewing the denial of a motion to suppress, the appellate courts consider the entire record below and not just the evidence presented at the suppression hearing); *State v. Johnson*, 1996-NMCA-117, ¶ 10, 122 N.M. 713, 930 P.2d 1165 ("On appeal, we are not limited to the record made on a motion to suppress, but may review the entire record to determine whether there was sufficient evidence to support the trial court's denial of the motion to suppress.").

**{7}** Following the hearing, the district court denied the motion to suppress. In its written order, the district court determined that Officer Rightmire initially had a dual purpose in making contact with Defendant: she was concerned for Defendant's welfare, and she was aware of the attempt to locate the woman seen in the roadway. The district court determined, however, that at the time Officer Rightmire requested Defendant's identification, the situation shifted from a community caretaking encounter to an investigative detention. Finally, the district court determined that Officer Rightmire had reasonable suspicion at the inception of the detention that Defendant had committed the crime of leaving the scene of an accident.

**{8}** Defendant now appeals. Additional facts are included in the analysis below.

**DISCUSSION**

**{9}** "The district court's denial of [a] motion to suppress presents a mixed question of fact and law." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "[W]e review the district court's application of the law to those facts de novo to determine whether the search or seizure was constitutionally reasonable." *State v. Chacon*, 2018-NMCA- 065, ¶ 19, 429 P.3d 347. "Determinations of reasonable suspicion are reviewed de novo." *State v. Garcia*, 2009-NMSC-046, ¶ 9, 147 N.M. 134, 217 P.3d 1032.

**{10}** Defendant first argues that the district court correctly determined that Officer Rightmire's request for Defendant's identification transformed the encounter from what was initially a community caretaking situation into an investigative detention requiring reasonable suspicion. *See State v. Montaño*, 2009-NMCA-130, ¶ 17, 147 N.M. 379, 223 P.3d 376 (determining that once the officer requested and obtained the defendant's identification, the defendant was not free to leave, and under the circumstances, the encounter could not be justified under the community caretaking doctrine). The State responds that Officer Rightmire's request for Defendant's identification was reasonable within the context of her community caretaking function, and the encounter did not become a detention until Officer Rightmire was asked by dispatch to hold onto Defendant and had Defendant sit in her patrol car. *See State v. Walters*, 1997-NMCA-013, ¶ 18, 123 N.M. 88, 934 P.2d 282 (recognizing that some requests for identification do not implicate the Fourth Amendment of the United States Constitution).

**{11}**  We believe it is unnecessary to resolve this question. For purposes of this appeal, we will assume, as the district court found, that Defendant was detained at the moment Officer Rightmire requested her identification. The question then is whether Officer Rightmire had reasonable suspicion to justify the detention. *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 ("Investigatory detention is permissible when there is a reasonable and articulable suspicion that the law is being or has been broken." (internal quotation marks and citation omitted)); *State v. Sanchez*, 2005-NMCA-081, ¶ 11, 137 N.M. 759, 114 P.3d 1075 ("Police may make an investigatory stop in circumstances that do not rise to the level of probable cause for an arrest if the officers have a reasonable suspicion that the law has been or is being violated.").

**{12}**  "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* (internal quotation marks and citation omitted). "In determining whether reasonable suspicion exists, we examine the totality of the circumstances." *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 21, 130 N.M. 386, 25 P.3d 225.

**{13}**  The district court found that, at the time Officer Rightmire asked Defendant for her identification, reasonable suspicion existed to detain Defendant on suspicion of leaving the scene of an accident. *See* NMSA 1978, §§ 66-7-203, -204 (1978) (setting out a motorist's duties upon colliding with a vehicle that is unattended). Relative to this, Officer Rightmire testified that, prior to her encounter with Defendant, she received information from dispatch regarding an ATL for a female wearing dark clothing who was carrying a backpack and walking from an accident that the county was investigating.[1] Officer Rightmire thus relied, in part, on information provided by police dispatch. Our appellate courts have upheld the legality of investigatory detentions in which an officer relied on information known to other officers in forming reasonable suspicion. *See State v. Vandenberg*, 2003-NMSC-030, ¶¶ 38-39, 134 N.M. 566, 81 P.3d 19 (recognizing that as a general proposition, an officer may reasonably rely upon the information obtained in a BOLO to provide reasonable suspicion to make an investigatory stop); *State v. Alderete*, 2011-NMCA-055, ¶¶ 13-20, 149 N.M. 799, 255 P.3d 377 (considering the knowledge and observations of the officers who directed another to stop a vehicle in assessing whether the detention was supported by reasonable suspicion); *see also*

---

[1]Defendant states in both her brief in chief and her reply brief that Officer Rightmire had no information from dispatch regarding an accident prior to stopping Defendant and that she only had a report of a woman walking down the highway. However, Officer Rightmire testified at the suppression hearing that, before she made contact with Defendant, "[d]ispatch had relayed an ATL . . . for a female with a backpack and dark clothing that was supposedly walking from an accident that the County was working on." This testimony is corroborated by the recording of the ATL contained on the CD of the communications between dispatch and the various police agencies.

*State v. Martinez*, 1980-NMSC-066, ¶ 13, 94 N.M. 436, 612 P.2d 228 ("Probable cause, however, can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest." (internal quotation marks and citation omitted)).

**{14}**   In such cases, we assess the existence of reasonable suspicion by examining the information known to the various police actors collectively or the information known to the officer directing another officer to effectuate a detention. *See id.* We therefore consider whether the totality of the information known to the various police officers and relayed through police dispatch amounted to reasonable suspicion to detain Defendant. *See id.* ¶¶ 11-13 (recognizing that a police radio bulletin based on information received by a police radio dispatcher that established probable cause provides an officer with sufficient probable cause to arrest).

**{15}**   The testimony at the suppression hearing and the recording of the dispatch calls indicates that there were two sources of information that formed the basis for the ATL heard by Officer Rightmire. First, police dispatch received a call relaying a concerned motorist report of a woman walking on U.S. Highway 550, including a description of the woman wearing dark clothing and carrying a backpack. Deputy Hoover also provided information to dispatch regarding the suspected identity of the driver of the crashed vehicle and his discovery of footprints in the snow leading from the driver's side door of the crashed vehicle to a fence bordering U.S. Highway 550. The testimony at the suppression hearing also established that the civilian call to report a woman walking on the highway came within a few minutes of Deputy Hoover being dispatched to investigate the vehicle crash. We believe this evidence and the logical inferences that can be drawn from these circumstances are sufficient to create a reasonable suspicion that the woman walking on U.S. Highway 550 reported by the motorist had been involved in the vehicle crash and had left the scene of the accident. *See State v. Lope*, 2015-NMCA-011, ¶ 18, 343 P.3d 186 (recognizing that reasonable suspicion depends on the totality of the circumstances and is based on an objective consideration of the specific facts together with the rational inferences to be drawn from those facts).

**{16}**   Having determined that the ATL was issued based on reasonable suspicion, we must next consider whether it was reasonable for Officer Rightmire to stop Defendant in relation to the ATL. *See Vandenberg*, 2003-NMSC-030, ¶ 38 (stating that where the information in a BOLO is corroborated by a second officer, a BOLO may provide reasonable suspicion for a stop). The ATL was issued for a woman carrying a backpack and wearing dark clothing walking on U.S. Highway 550. Officer Rightmire testified that, after hearing the ATL, she saw Defendant walking on U.S. Highway 550, and that Defendant was wearing dark clothing and carrying two purses. Officer Rightmire also testified that other than the vehicle that Defendant said had dropped her off, there was no one else out. Based on these circumstances, we believe that reasonable suspicion existed to detain Defendant in relation to the ATL. *See State v. Watley*, 1989-NMCA-112, ¶ 17, 109 N.M. 619, 788 P.2d 375 (determining that police had reasonable suspicion to detain the defendant where he was stopped in the early morning hours a short distance from the area where an alleged crime had been committed, and a man

had been seen running toward the vicinity); *see also State v. Lovato*, 1991-NMCA-083, ¶¶ 11-12, 112 N.M. 517, 817 P.2d 251 (determining that reasonable suspicion existed to stop a vehicle based on an ATL where the vehicle stopped met the general description radioed by the police dispatcher, and there was no other vehicular traffic in the area.).

**{17}**    Defendant argues that Officer Rightmire was not certain that Defendant was the person sought in the ATL when she stopped Defendant. Defendant also points to differences between the description of the woman sought in the ATL and Officer Rightmire's description of Defendant. Specifically, Defendant argues that the ATL sought a woman wearing dark clothing and carrying a backpack, while Officer Rightmire described Defendant as wearing a T-shirt and carrying two purses. We first note that certainty is not required to establish reasonable suspicion. *See State v. Candelaria*, 2011-NMCA-001, ¶ 15, 149 N.M. 125, 245 P.3d 69 (noting that "[t]he concept of reasonable suspicion has always embraced a certain degree of uncertainty"); *see also State v. Yazzie*, 2016-NMSC-026, ¶ 33, 376 P.3d 858 ("Reasonable suspicion engages probabilities."). Additionally, while we recognize that the ATL described a backpack, but Defendant was stopped with two purses, there were more similarities than differences between the description of Defendant and the woman in the ATL, including the fact of dark clothing, walking on the highway, and the carrying of a bag of some sort. These similarities, in combination with Officer Rightmire's observation that no one else was out at that time, were sufficient to provide reasonable suspicion to stop Defendant in relation to the ATL. *See, e.g.*, *State v. Ortiz*, 2017-NMCA-006, ¶ 15, 387 P.3d 323 ("It was reasonable for [the o]fficer . . . to have stopped the only person that she saw acting suspiciously by repeatedly jumping the fence of a private property in the vicinity of a recent report of suspicious activity.").

## CONCLUSION

**{18}**    For these reasons, we affirm the denial of Defendant's motion to suppress.

**{19}    IT IS SO ORDERED**.

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**KRISTINA BOGARDUS, Judge**