This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41522**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**STEVEN M. CARRASCO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Court Judge**

Raúl Torrez, Attorney General
Ellen Venegas, Assistant Solicitor General
Santa Fe, NM

for Appellee

Joseph Sullivan
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**     This matter was submitted to this Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of this brief in chief, this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief and answer brief, we affirm for the following reasons.

**{2}**     Defendant appeals from his conviction for trafficking a controlled substance following a jury trial. [2 RP 318-23] On appeal, Defendant challenges the district court's order denying his motion to suppress and argues that the deputies lacked reasonable suspicion for the initial stop, the district court incorrectly relied on a description of observations made by a nontestifying deputy, and the initial stop was pretextual. [BIC 3-4] We address each issue in turn.

**{3}**     Denial of a motion to suppress presents a mixed question of fact and law. *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. Our review of the district court's denial of a motion to suppress involves a two-step process, in which we first examine whether substantial evidence supported the district court's findings and then review de novo the district court's application of law to the facts to determine whether the search or seizure was reasonable. *State v. Vasquez-Salas*, 2023-NMSC-023, ¶ 9, 538 P.3d 40.

**{4}**     "The police may make an investigatory stop in circumstances that do not rise to probable cause for an arrest if they have a reasonable suspicion that the law has been or is being violated. Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038 (citations omitted). "In determining whether reasonable suspicion exists, we examine the totality of the circumstances." *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 21, 130 N.M. 386, 25 P.3d 225. "This is a fact-specific inquiry that does not lend itself to bright-line rules." *State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M. 414, 120 P.3d 836 (internal quotation marks and citation omitted), *overruled on other grounds by Leyva*, 2011-NMSC-009, ¶ 3. "Additionally, this Court defers to the training and experience of the officer when determining whether particularized and objective indicia of criminal activity existed." *State v. Olson*, 2012-NMSC-035, ¶ 13, 285 P.3d 1066 (internal quotation marks and citation omitted).

**{5}**     Defendant first argues that the State failed to establish that officers had reasonable suspicion because the undercover deputy was acting on a hunch that the Kia was stolen, and also that the deputies' actions were unreasonable given the availability of "less intrusive means" of investigation. [BIC 3-4, 7, 10] The undercover deputy testified that he requested the assistance of the uniformed deputy because the Kia exhibited specific physical characteristics indicating that it may have been a stolen vehicle—namely the Kia was a specific type of vehicle that was commonly stolen, the lack of a license plate, and the damage to the front driver's side door handle—in addition to its location parked directly next to a confirmed stolen vehicle. [BIC 4-5; AB 1-2] Based on his training and experience investigating stolen vehicles, the undercover deputy testified that these observations were consistent with a possible stolen vehicle. [BIC 4-5; AB 1] The undercover deputy further testified that he requested the uniformed deputy's assistance because, while he personally could have approached the vehicle to obtain the VIN, he did not want to be observed getting out of his undercover vehicle. [BIC 5; AB 2, 8] The undercover deputy also testified about the safety concerns with a law enforcement officer approaching an occupied vehicle to observe and note the VIN from the front windshield. [*Id.*]

**{6}** In examining the totality of the circumstances, we conclude that the undercover deputy's suspicion was based on specific and articulable facts that the Kia was possibly stolen, rather than an unsupported intuition or baseless hunch. *See State v. Alderete*, 2011-NMCA-055, ¶ 15, 149 N.M. 799, 255 P.3d 377 (observing that "[i]n order to justify a stop based on reasonable suspicion, the State 'must provide specific and articulable facts that, together with the rational inferences from those facts, reasonably warrant the intrusion'" (quoting *State v. Sanchez*, 2005-NMCA-081, ¶ 11, 137 N.M. 759, 114 P.3d 1075)); *see id.* (stating that "reasonable suspicion cannot be based on unsupported intuition or inarticulate hunches"). We further conclude that the deputies' actions in approaching the potentially stolen vehicle and removing the occupants in order to further investigate were reasonable under the circumstances. *See State v. Vandenburg*, 2003-NMSC-030, ¶ 23, 134 N.M. 566, 81 P.3d 19 ("In evaluating the reasonableness of an officer's conduct when confronted with exigent circumstances, 'the inquiry is an objective one into whether a reasonable, well-trained officer would have made the judgment this officer made. If reasonable people might differ, we defer to the officer's good judgment.'" (alterations and omissions omitted) (quoting *State v. Gomez*, 1997-NMSC-006, ¶ 40, 122 N.M. 777, 932 P.2d 1)).

**{7}** Defendant also challenges the district court's reliance on the undercover deputy's testimony about the uniformed deputy's observations of illegal drugs apparently in plain sight inside the vehicle. [BIC 4, 7, 8, 10] We note that it is well established in New Mexico that evidence that may have otherwise run afoul of the Rules of Evidence or a defendant's confrontation rights during trial is permitted during a hearing on a motion to suppress. *See* Rule 5-212 NMRA comm. cmt. ("At a hearing on a motion to suppress, the Rules of Evidence, except for the rules on privileges, do not apply. For example, hearsay evidence is admissible." (citations omitted)); *State v. Rivera*, 2008-NMSC-056, ¶ 1, 144 N.M. 836, 192 P.3d 1213 ("[W]e conclude that the Sixth Amendment rights of an accused to confront and cross-examine witnesses at trial do not extend to pretrial hearings on a motion to suppress evidence."). Thus, we find no error in the district court's admission of the nontestifying deputy's observations.

**{8}** Lastly, we turn to Defendant's contention that the traffic stop was pretextual. [BIC 8, 11] "[T]o determine whether a stop is pretextual subterfuge, courts should consider the totality of the circumstances, judge the credibility of witnesses, weigh the evidence, make a decision, and exclude the evidence if the stop was unreasonable at its inception." *State v. Ochoa*, 2009-NMCA-002, ¶ 39, 146 N.M. 32, 206 P.3d 143. A totality of the circumstances analysis includes considering the "objective reasonableness of an officer's action and the subjective intent of the officer—the real reason for the stop." *Id.* (internal citations omitted). Upon finding reasonable suspicion justifying the stop, "the district court must decide whether the officer's motive for the stop was unrelated to the objective existence of reasonable suspicion." *Id.* ¶ 40 (alteration, internal quotation marks, and citations omitted). The burden of proof shifts to the defendant "to show pretext based on the totality of the circumstances"; however, "[i]f the defendant has not placed substantial facts in dispute indicating pretext, then the seizure is not pretextual." *Id.*

**{9}**     Defendant asserts that his seizure was based on a pretextual traffic stop due to the lack of a license plate on the vehicle, rather than a stolen vehicle investigation. [BIC 4] As explained above, we have already determined the deputies had reasonable suspicion that the Kia was a possible stolen vehicle to justify the stop of the driver and Defendant. Despite Defendant's contention to the contrary, the undercover detective repeatedly testified that he was running license plates to look for stolen vehicles, that he suspected the Kia was stolen due to his observations, and that he requested support from a uniformed deputy to further investigate whether the Kia was stolen. [BIC 4-5; AB 1-2, 8-9] In examining the totality of the circumstances, we determine that the purportedly pretextual motive ascribed to the officers by Defendant—that they were actually only investigating the missing license plate—was directly related to and encompassed by the broader stolen vehicle investigation and further supported by specific and articulable facts of reasonable suspicion or probable cause. *Ochoa*, 2009-NMCA-002, ¶ 40. Therefore, we conclude that Defendant failed to establish pretext.

**{10}**     For these reasons, we affirm Defendant's conviction.

**{11}   IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**KATHERINE A. WRAY, Judge**